UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS ROBERTS

      Plaintiff,

v.                                                    Case No: 2:12-cv-676-FtM-29DNF

ABU TAREK, ANAMUL M ISLAM,
SAYEM   SULTAN,   GABRIEL
KELBERMAN,   HOWARD   K.
POULTON,   SAMANTHA   L.
POULTON, PARVEZ S. ISLAM,
MUHAMMAD ISLAM, ADAM   G
KELBERMAN, BONNIE S. SWART,
and AVA P. KELBERMAN,

      Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on *pro se* plaintiff's Renewed Motions for Default Judgment (Docs. ## 82-90) filed on September 12, 2013, a "Respectful Request for Status" (Doc. #91) filed on December 20, 2013, and Supplemental Motion for Default Judgement [sic] (Doc. #92) filed on March 14, 2014. No responses have been filed and the time to respond has expired.

As a preliminary matter, as to defendants Parvez S. Islam and Muhuammad Islam, the Court finds no service of process was ever returned as executed, that no Clerk's Entry of Default was applied for or obtained by plaintiff, and no action otherwise has been taken against defendants Parvez S. Islam or Muhammad

Islam.  Therefore these defendants will be dismissed for failure
to prosecute.

## I.

On September 5, 2013, the Court issued an Order (Doc. #81)
finding that plaintiff had met the necessary prerequisites to
apply for a default judgment but denied plaintiff's Motions for
a default judgment against defendants without prejudice.  (See
Doc. #71.)  More specifically, as to Count I, the Court found
that without sufficient factual allegations in the Complaint,
and the absence of the contract at issue, a default judgment in
favor of plaintiff could not be supported.  As to the fraud
counts, the Court found no facts or legal argument to support $4
million in punitive damages.  As to all damages, the Court found
no accounting to support the amounts sought.  Plaintiff has now
filed his renewed motions for default judgment.

The Court previously summarized the factual allegations in
the Complaint (Doc. #1) as to plaintiff's contractual
relationship with Abu Tarek to purchase a condominium unit
located at 11 Jamaica Plain, Massachusetts 02130.  (See Doc.
#81, pp. 2-3.)  Plaintiff alleges a breach of contract against
Abu Tarek (Count I), because the purchase was supposed to be
free and clear of liens, and also asserts fraud against Abu
Tarek (Count II), and a civil conspiracy to commit fraud (Count
III) against all defendants because the $243,000 paid was

distributed to Abu Tarek, Anamul M. Islam, Sayem Sultan, Gabriel Kelberman, Howard K. Poulton, Samantha L. Poulton, Parvez S. Islam, Muhammad Islam, Adam G. Kelberman, Bonnie S. Swart, and Ava P. Kelberman.

## II.

In support of the motions, and attached to the Renewed Motion against Abu Tarek, is an Affidavit Showing the Amount Due (Doc. #82-1) by plaintiff asserting $243,000 in actual damages, $2 million as punitive damages for fraud, and $2 million for civil conspiracy to commit fraud. Also attached, and signed by plaintiff himself, are an Affidavit That the Defendant is Not in the Military Service, Affidavit That the Defendant Has Failed to Plead or Otherwise Defend, and Affidavit That the Defendant is Not a Minor or Incompetent Person. (Doc. #82-1.) Plaintiff filed nearly identical Renewed Motions and Affidavits as to Anamul M. Islam (Doc. #83), Adam G. Kelberman (Doc. #84), Ava P. Kelberman (Doc. #85), Bonnie S. Swart (Doc. #86), Gabriel Kelberman (Doc. #87), Howard K. Poulton (Doc. #88), Samantha L. Poulton (Doc. #89), and Sayem Sultan (Doc. #90) asserting joint and several liability for the damages. Additional evidence attached to the Renewed Motion as to Abu Tarek includes a translated deposition excerpt of Abu Tarek from a case filed in the Commonwealth of Massachusetts, Roberts v. Tarek, Case No.

2009-04562, a Quitclaim Deed, and a Standard Form Purchase and Sale Agreement.

Plaintiff filed the Interpreted Deposition of Abu Tarek (Doc. #82-2), taken on September 13, 2010, for a case filed in Massachusetts against Abu Tarek and Deutsche Bank National Trust Company. The testimony by Abu Tarek (Tarek) is with regard to the underlying sales transaction of 10 Jamaicaway, Unit 11, the subject property in this case. Tarek testified that in approximately 2003, Anamul Islam (Islam), his manager at a prior place of employment (Store 24), approached him about obtaining a mortgage and in fact applied for a mortgage on Tarek's behalf by using his personal information. Islam and Tarek both attended the closing to sign the papers after the mortgage was approved, but Tarek testified that he never physically saw the purchased property. Tarek never made a mortgage payment on the Jamaicaway property, and in fact did not fully understand how a mortgage worked. Tarek went to the closing and signed whatever documents Islam directed him to sign, but without knowledge or an understanding of the sale.

In 2004, Islam called to say that he had a buyer, and Tarek met plaintiff for the first time at the closing. An Offer to Purchase Real Estate (Doc. #92, p. 7) was accepted by Tarek on February 11, 2004. The Quitclaim Deed (Doc. #82-2, p. 11; Doc. #92, p. 8) was signed by Tarek on February 20, 2004, conveying

the Jamaicaway property to plaintiff for $243,000.  The February 18, 2004, Standard Form Purchase and Sale Agreement is signed by Tarek as the seller and by plaintiff as the buyer.  (Doc. #82-2, p. 14.)  The Agreement allows for the seller, at the time of the delivery of the deed, to use the purchase money to clear title. The Agreement also provides that the buyer agrees that no review of the title was made, and that the purchase includes the seller's rights, title, and interest in the property.  (<u>Id.</u>, ¶¶ 14, 35.)  Tarek obtained no proceeds from the sale and never lived at the property.   Islam's name is not on any of the documents.

In September 2007, an Assignment of Tarek's mortgage was made from the holder, Argent Mortgage Company, LLC, to Deutsche Bank National Trust Company as Trustee, and under a pooling and servicing agreement.  (Doc. #92, p. 13.)  In May 2008, an unsigned letter Notice to Quit for Possession (Doc. #92, p. 14) issued from counsel for Deutsche Bank National Trust Company, to occupants of the 10 Jamaicaway property notifying them that their occupancy was being terminated pursuant to a foreclosure. This appears to be the first notice plaintiff had of a pre-existing mortgage on the Jamaicaway property.

**III.**

In Count I, plaintiff seeks $243,000[1], in economic damages for a breach of contract by Abu Tarek. Plaintiff alleges that he agreed to pay $243,000 for the Jamaicaway property free and clear of liens. The Standard Form Purchase and Sale Agreement (Agreement) (Doc. #82-2, pp. 14-18) provides that the quitclaim deed will be delivered conveying a "good and clear record and marketable title"[2]; and that after the expiration of any extended time to perfect title[3], if the Seller (Tarek) fails to remove any defects in title or the holder of a mortgage refuses to permit insurance proceeds to be used to clear title, payments under the Agreement shall be refunded and all obligations shall cease and be void. (Id., ¶¶ 4, 11.) Tarek was not required to maintain insurance until the delivery of the deed, in no event was Tarek required to expend more than $1,000 to clear title and deliver

---

[1] Plaintiff supplemented his request for a default judgment to include a total accounting or sum certain of damages in the amount of $506,278.00, representing the purchase price of the condominium ($243,000), three years each of lost rental income ($130,000) and tax assessments ($4,790.00), repairs and renovations to the property ($12,785.00), condominium fees ($30,000) legal costs and fees ($10,000), and an accrued interest of 18%. (Doc. #92, p. 25.)

[2] "A good and clear record title free from all incumbrances means a title which on the record itself can be again sold as free from obvious defects, and substantial doubts." O'Meara v. Gleason, 246 Mass. 136, 138, 140 N.E. 426, 427 (Mass. 1923).

[3] The extension of time for performance gave until 4:00 p.m. on February 20, 2004. (Doc. #82-2, p. 17.)

Case 2:12-cv-00676-JES-DNF   Document 93   Filed 05/20/14   Page 7 of 11 PageID 484

possession, and the property was sold in "AS IS" condition. (Id., ¶¶ 10, 15, 34.)

The Agreement clearly states "NONE" in paragraph 25 with regard to any warranties and representations made, and paragraph 35 of Rider A to the Agreement states that plaintiff made no review of the title and that plaintiff was purchasing whatever rights, title and interests Tarek may have had in the Jamaicaway property. (Id., ¶¶ 25, 35.) The Standard Form Purchase and Sale Agreement clearly states in paragraph 36 and paragraph 39:

> No Representations to Buyer: BUYER warrants and agrees that neither SELLER nor SELLER's attorneys have made any representation whatsoever regarding the title to the Unit or the property, the payment of any Condominium fees, taxes, charges or assessments related to the Unit or property or the conditions of the Unit or property, and that BUYER is not relying upon any such representations in BUYER'S purchase of the Unit.

> Merger: It is understood and agreed that (i) all contemporaneous or prior representations, statements, understandings and agreements, oral or written, between the parties are merged in this Agreement, which alone fully and completely expresses the agreement of the parties, and (ii) that this Agreement is entered into after full investigation, neither party relying on any statement or representation made by the other which is not embodied in the Agreement.

(Doc. #82-2, p. 18, ¶¶ 36, 39.) Therefore, the Agreement provides for no warranties or representations with regard to the

- 7 -

title and also precludes any oral representations not merged in the Agreement.   Regardless of the contradictory Rider clauses, Tarek had a general good faith requirement to take reasonable steps to remove the mortgage lien on the property, even if limited to $1,000, and there is no evidence that he did so.   See Durkin v. Ferreira, 21 Mass. App. Ct. 771, 774-75, 490 N.E. 2d 498, 500-01 (Mass. Ct. 1986)(collecting cases).

The deed was to be delivered on February 20, 2004, at the Suffolk County Registry of Deed or the Buyer (plaintiff or plaintiff's counsel).   (Id., ¶ 8.)   A Quitclaim Deed (id., p. 11) was filed and obtained by plaintiff.   The general rule is that the "acceptance of a deed discharges the contractual duties of a *seller* under a purchase and sale agreement except for those undertakings which are embodied in the deed itself or which are additional or collateral to the main promise to convey the land and are not inconsistent with the deed as given."   Gloucester Landing Assocs. Ltd. P'ship v. Gloucester Redevelopment Auth., 60 Mass. App. Ct. 403, 410, 802 N.E. 2d 1046, 1052 (Mass. App. Ct. 2004)(emphasis in original)(citations omitted).   Therefore, although Tarek had a contractual obligation to proceed in good faith to remove any encumbrances on the title, Tarek's obligations regarding the mortgage were discharged when the deed was accepted and recorded.   Therefore, a default judgment will

be denied as to Count I, and the breach of contract claim dismissed.

## IV.

In Count II, plaintiff seeks punitive damages in the amount of $2 million from all defendants because Tarek lied about the existence of the mortgage, Tarek knew that the title was not clear when he sold the property to plaintiff, Tarek intentionally deceived plaintiff, and plaintiff justifiably relied on Tarek's statement resulting in the loss of $243,000.

The deposition testimony submitted in support of a default judgment contradicts a finding of fraud.   Tarek testified under oath that his actions were taken at the behest of Islam, that he did not know about the mortgage, that he did not borrow money directly, that he simply signed what he was told to sign without any intent or understanding.   Therefore, there is no evidence that Tarek himself committed fraud or made any representations that the title was clear of a mortgage.

No factual allegations or supporting documents have been provided to support a claim of fraud against any defendant other than Tarek.   Therefore, Count II will also be dismissed as to the other defendants (other than Parvez Islam and Muhammad Islam).

**V.**

In Count III, plaintiff seeks punitive damages in the amount of $2 million from all defendants for a conspiracy to commit fraud.  For the reasons stated below, the Third Claim for Relief will also be dismissed in its entirety.

Tarek is the only defendant listed on the mortgage, identified by the mortgage holder, identified as the seller, and the only defendant who signed as the seller of the property. None of the other defendants are listed or named in any of the supporting documents.  Additionally, other than the deposition testimony of Tarek stating that his former manager Islam was the individual behind obtaining the mortgage and the sale of the Jamaicaway property, there is no evidence presented or produced that any of the other named defendants perpetrated a fraud or shared in a distribution of funds with Tarek.  To the contrary, Tarek testified that he received nothing from the sale of the property.  Therefore, even though Islam may have committed some fraud, there is no evidence of a collusion or conspiracy to commit fraud.  Count III will be dismissed as to all defendants (other than Parvez Islam and Muhammad Islam).

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's Supplemental Motion for Default Judgement [sic] (Doc. #92), construed as a motion to supplement the

renewed motions for default judgment, is **GRANTED** and the supplemental information was considered.

2. Plaintiff's Renewed Motion for Default Judgment (Doc. #82) as to Abu Tarek is **DENIED.**

3. Plaintiff's Renewed Motions for Default Judgment (Doc. ## 83-90) are **DENIED.**

4. The Clerk shall enter judgment as follows:

   A. Dismissing all three counts against all defendants (Abu Tarek, Anamul Islam, Adam Kelberman, Ava Kelberman, Bonnie Swart, Gabriel Kelberman, Howard Poulton, Samantha Poulton, and Sayem Sultan) with prejudice; and

   B. Dismissing defendants Parvez Islam and Muhammad Islam without prejudice for failure to prosecute.

5. Plaintiff's "Respectful Request for Status" (Doc. #91) is **DENIED** as moot.

6. The Clerk shall terminate all deadlines and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___20th___ day of May, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies: Plaintiff